UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| LAMOS WAYNE STURGIS,<br><br>　　　Plaintiff,<br><br>v.<br><br>SAN PABLO POLICE OFFICER ROBERT BRADY, et al.,<br><br>　　　Defendants. | Case No: C 08-5363 SBA (PR)<br><br>**ORDER DENYING SAN PABLO DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS; DENYING COUNTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; AND RE-REFERRING CASE FOR SETTLEMENT PROCEEDINGS**<br><br>Dkts. 57, 77 |

## I.　INTRODUCTION

Lamos Wayne Sturgis, a former state prisoner, brings the instant action pursuant to 42 U.S.C. § 1983, against officers from the San Pablo Police Department and Contra Costa County Sheriff's Department. Plaintiff alleges that Defendants violated his constitutional rights by using excessive force and being deliberately indifferent to his serious medical needs in connection with his arrest on December 6, 2007.

The parties are presently before the Court on two motions: (1) Defendants City of San Pablo and Officers Robert Brady and David Neece's (collectively "San Pablo Defendants") Motion for Partial Judgment on the Pleadings with Regard to Plaintiff's Second Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(c), Dkt. 57; and (2) Defendant Contra Costa County Sheriff's Department Deputies Brian McDevitt and Zara Cushman's ("County Defendants") Motion for Summary Judgment and/or Partial Summary Judgment, Dkt. 77. Having read and considered the papers submitted in

connection with this matter, the Court DENIES both motions for the reasons set forth below.

## II. BACKGROUND

### A. FACTUAL SUMMARY

#### 1. Plaintiff's Version

On December 6, 2007, at around 2:00 p.m., Plaintiff was driving a car in Pittsburg, California.  Dkt. 100, Sturgis Decl. ¶ 2.  According to Plaintiff, he was pulled over and "[w]ithin a few minutes of encountering the police while in the car, [he] was face-down and handcuffed in the driveway area of a house on Cross Street."  Id. ¶ 3.  After Plaintiff was "subdued, the arresting officers, [Defendants] Brady and Neece, continued to strike [him] in the back of [his] head."  Compl., Dkt. 1 at 3.  Defendants Brady and Neece handcuffed Plaintiff, asked him to identify himself, and removed his identification from his pocket, while he remained face-down on the ground.  Sturgis Decl. ¶ 4.  Defendant Brady then passed Plaintiff's identification to the other officers, including Defendants Neece, McDevitt and Cushman, all of whom were at the scene.  Id. ¶ 4; Dkt. 45 at 1-3, 5; Dkt. 57-1 at 100.

Defendant McDevitt then walked past Plaintiff while he was laying on the ground with a dog named "K-9 Doc" and gave the dog a command in a foreign language.  Sturgis Decl. ¶ 5.  The dog "turned around, walked back to [Plaintiff], and began biting [him] on [his] back, right hip, and the back of [his] left arm while [he] remained face-down and in restraints."  Id.; see also Dkt. 1 at 3.  Plaintiff pleaded for the officers to stop the dog from biting him; however, Defendant McDevitt waited three minutes before giving the dog another command to stop.  Sturgis Decl. ¶ 9.  In addition, Plaintiff claims that Defendant McDevitt was recording the dog's attack with a video camera.  Id. ¶ 10.

Plaintiff claims that he suffered dog bite marks on his right hip, back, left forearm and left upper arm.  Id. ¶¶ 6-8.  While he was on the ground, Plaintiff saw paramedics arrive, but "police wave[d] them off and [told] them they could not treat [him]."  Id. ¶ 11.  Plaintiff was then put into the back of a police car, "where [he] had to continue to wait for

medical treatment." Id.  Plaintiff claims that "[i]t was dark out by the time [he] was taken to the hospital." Id.

### 2. Defendants' Version

In support of their dispositive motions, Defendants have submitted the transcript of Defendant Brady's testimony at the June 27, 2008 Grand Jury hearing (dkt. 57-1, Ex. B), Defendant Brady's police report, and Defendant McDevitt's declaration (dkt. 81).

#### a) *Defendant Brady's Grand Jury Testimony*

Defendant Brady testified that on December 6, 2007, at approximately 3:15 p.m., he and Defendant Neece were "working a stolen vehicle task force" in Pittsburg when he observed Plaintiff driving a stolen gray Honda Civic with license plate 2PJG365. Dkt. 57-1, Ex. B at 26:26-27:15,31:19-33:6.  Defendant Brady drove behind Plaintiff and "activated [his] overhead lights to conduct a stop on the vehicle." Id. at 34:12-24.  Plaintiff did not stop right away, but he instead "made a southbound turn onto Diane Street and pulled over to the curb." Id. at 27:2-5.  Defendant Brady stopped his vehicle behind Plaintiff, exited his police vehicle, but he did not approach Plaintiff's vehicle. Id. at 35:9-25.  Defendant Brady pulled out his gun, pointed it at Plaintiff, and "yelled for [Plaintiff] to turn the vehicle off." Id. at 35:17-36:4.  Plaintiff did not comply, and he instead "hit the gas and sped off." Id. at 36:5-15.

A short vehicle pursuit ensued, which involved Plaintiff running stop signs and speeding at 50 to 55 miles per hour in a 25 mile an hour zone. Id. at 36:26-39:37.  Plaintiff slowed down in front of 881 Cross Street, and he exited the vehicle while it was still in "drive." Id. at 39:28-40:6.  Plaintiff ran away on foot, and the vehicle continued to run into a front yard and struck another vehicle before coming to a complete stop. Id. at 40:7-9.  Plaintiff ran up the driveway of 881 Cross Street, jumped a side fence, and attempted to jump a second fence into the back yard, despite Defendant Brady yelling for Plaintiff to stop. Id. at 41:15-42:19.  Defendant Brady caught up to Plaintiff before he jumped over the second fence, grabbed the back of his jacket, and pulled him off the fence. Id. at 42:20-

43:1.  Plaintiff immediately turned around, clenched his fists and started throwing punches towards Defendant Brady, who stepped back to avoid the punches.  Id. at 43:5-21.

Plaintiff then again attempted to jump the second fence.  Id. at 43:22-25.  Defendant Brady pulled Plaintiff off the fence a second time, and Plaintiff again began throwing punches at Defendant Brady, who was ordering Plaintiff to stop resisting.  Id. at 43:26-44:9.  After Defendant Brady was able to avoid Plaintiff's punches by moving back momentarily, he then advanced on Plaintiff and tried to throw Plaintiff to the ground.  Id. at 44:12-18.  Plaintiff grabbed Defendant Brady by his shirt and pushed the officer up against a wall.  Id. at 45:15-18.  Defendant Brady used his right hand to strike Plaintiff's face, causing Plaintiff to fall to one knee.  Id. at 45:18-20.  Plaintiff threw up his left elbow and hit Defendant Brady in the jaw.  Id. at 45: 20-21.  In response, Defendant Brady struck Plaintiff's face a second time.  Id. at 45: 21-22.

Defendants Neece, Cushman and McDevitt as well as Defendant McDevitt's K-9 partner, K-9 Doc, arrived at the backyard.  Id. at 21-24.  Even after the other officers arrived, Plaintiff did not stop the altercation with Defendant Brady.  Id. at 45:25-28.  K-9 Doc closed in on Plaintiff and bit his left arm, which caused Plaintiff to break from his altercation with Defendant Brady.  Id. at 46:1-3.  Plaintiff continued to attempt to escape, but he tripped and fell down.  Id. at 46:3-4.  Even though Plaintiff was on the ground with the K-9 Doc on his left arm, he still tried to throw punches with his right arm and was "kicking at all of [the officers]."  Id. at 46:5-7.  Because Defendant Brady was unaware whether Plaintiff was armed, Defendant Brady struck Plaintiff's face once more, which stunned Plaintiff enough that the officers were able to take Plaintiff into custody.  Id. at 46:8-13.  Defendant Brady claims that he suffered a sore jaw, minor bruising to his facial area, as well as cuts and scrapes on his hands.  Id. at 46:14-19.

The record does not include Defendant Brady's testimony before the grand jury as to the events that transpired *after* Plaintiff was taken into custody.  However, according to Defendant Brady's police report, American Medical Response ("AMR") personnel

responded to the scene, but "due to [Plaintiff's] combative state [Defendant Brady] decided to transport him to the hospital [him]self." Dkt. 57-1 at 100.

### b) *Defendant McDevitt's Declaration*

When Defendant McDevitt arrived at the back yard of 881 Cross Street, he observed Plaintiff punching Defendant Brady from a standing position with Defendant Brady's back up against a wall. Dkt. 81, McDevitt Decl. ¶ 8. Defendant McDevitt released K-9 Doc and commanded him to bite/hold Plaintiff. Id. K-9 Doc bit and held Plaintiff' left arm. Id. ¶ 9. Defendant McDevitt ordered Plaintiff to go to the ground, but he did not comply. Id. Instead, Plaintiff began to back into the confined space of a wooden shed. Id. Plaintiff then fell to the ground with K-9 Doc "on the bite/hold of his left arm." Id. The other officers assisted with controlling and placing Plaintiff into handcuffs. Id. After Plaintiff was handcuffed, Defendant McDevitt ordered K-9 Doc to release the bite/hold, which he did immediately. Id. Defendant McDevitt estimates that K-9 Doc was on bite/hold for "approximately ten seconds." Id. ¶ 10.

Defendant McDevitt observed that Plaintiff "sustained compression marks/abrasions and punctures to his left forearm and a[] one-inch puncture to his upper right hip." Id. AMR personnel responded to the scene and examined Plaintiff.[1] Id. Defendant Brady then transported Plaintiff to the Contra Costa Regional Medical Center for treatment. Id.

### B. PROCEDURAL HISTORY

#### 1. State Criminal Proceedings

Following his arrest on December 6, 2007, Plaintiff was charged in state court with: (1) violation of California Vehicle Code ("VC") § 10851(a) (unlawfully driving or taking vehicle without the consent of the owner); (2) violation of California Penal Code ("PC") § 69 with regard to Defendant Brady (resisting executive officer); (3) violation of VC

---

[1] The record contradicts Defendant McDevitt's statement that Plaintiff was examined by AMR personnel at the scene. According to Defendant Brady and Plaintiff, medical treatment was not given to Plaintiff until he arrived at the hospital. Dkt. 57-1 at 100; Sturgis Decl. ¶ 11.

§ 2800.2(a) (evading peace officer – reckless driving); (4) violation of PC § 496(d) (receiving stolen motor vehicle); and (5) violation of PC § 245(c) with regard to Defendant Brady (assault with force likely to produce great bodily injury upon peace officer). Dkt. 57-1, Ex. B at 20:4-23:9. On July 31, 2008, a First Amended Indictment was issued, which did not alter the alleged criminal charges but added an additional enhancement. Dkt. 57-1, Ex. C.

The trial began on August 6, 2009. On August 10, 2009, prior to the jury panel having been sworn, Plaintiff changed his plea to Counts 1 and 2 to a plea of no contest. Plaintiff pleaded no contest to violating VC § 10851(a) (unlawfully driving or taking vehicle) and PC § 69 (resisting executive officer), and he was sentenced to five years and four months in state prison. Dkt. 57-1, Ex. F. On May 3, 2010, the sentence was modified to include 306 days of local custody credits. Dkt. 79, Ex. J at 1. Pursuant to the plea bargain, the trial court struck the punishment for any enhancements, and all other charges were dismissed. Dkt. 79, Ex. L at 2. On September 9, 2010, the state appellate court affirmed the judgment against Plaintiff. Id. at 2-6. The California Supreme Court's official website shows that the state supreme court denied review on January 12, 2011. See People v. Sturgis, Cal. S. Ct. No. A126041.

### 2. The Instant Action

Plaintiff filed the instant action in this Court on November 26, 2008, and thereafter filed an Amended Complaint on February 11, 2009. Dkt. 1, 6. On April 30, 2009, the Court stayed these proceedings and administratively closed the action due to the pendency of the state criminal proceedings. Dkt. 10. On November 25, 2013, the Court lifted the stay and reopened the file. Dkt. 22.

On July 23, 2014, the Court granted Plaintiff leave to file a Second Amended Complaint ("SAC") to allege Fourth Amendment claims for excessive force and for deliberate indifference to his serious medical needs against Defendants Brady, Neece and McDevitt, and a cognizable municipal liability claim against the City of San Pablo. Dkt. 26

at 2-3, Dkt. 27.  The Court also exercised supplemental jurisdiction over Plaintiff's state law claim for intentional infliction of emotional distress ("IIED").  The Court also referred this case to the Pro Se Prisoner Settlement Program before Magistrate Judge Nandor Vadas. Id. at 6.  Thereafter, the Court found that Plaintiff had provided additional facts linking Defendant Cushman (incorrectly named in police reports as "Officer Parrilla" (Dkt. 45 at 5, 57-1 at 98) and in the SAC as "Officer Perrilla" (Dkt. 27 at 1), to the claims of excessive force and deliberate indifference to serious medical needs based on her failure to intervene. Dkt. 69 at 2 (citing Dkt. 45 at 1, 5).

### C. MOTIONS BEFORE THE COURT

Now before the Court are the San Pablo Defendants' Motion for Partial Judgment on the Pleadings with Regard to Plaintiff's Second Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(c), in which Defendant Neece has filed a joinder.  Dkt. 57, 113. The County Defendants have filed a Motion for Summary Judgment and/or Partial Summary Judgment, in which Defendant Cushman filed a joinder.  Dkt. 77, 115.

In support of their respective motions, Defendants request the Court to take judicial notice of the following certified copies of public records relating to Plaintiff's arrest, resulting criminal proceedings and appeal:  (1) the Reporter's Transcript of Grand Jury Proceedings; (2) the First Amended Indictment filed against Plaintiff; (3) the Reporter's Transcript of Pre-Trial proceedings and Plaintiff's plea; (4) Plaintiff's August 10, 2009 plea form; (4) Clerk's Docket and Minutes and Minute Orders dated August 10, 2009 and May 3, 2010 from Plaintiff's criminal case; (5) the Abstracts of Judgment – Prison Commitment – Determinate filed August 10, 2009 and May 3, 2010; (6) Defendant Brady's police report; and (7) the state appellate court's September 9, 2010 decision.   Dkts. 58, 79.  Since Plaintiff does not oppose Defendants' request for judicial notice, and because these records are not subject to reasonable dispute, the Court grants the request for judicial notice of these documents.  See Fed. R. Evid. 201.

Plaintiff, who is no longer in custody, has filed oppositions to the pending motions along with a supporting declaration. Dkt. 96, 99, 100. However, only Plaintiff's original complaint and the declaration are verified; therefore, the Court will construe them as opposing affidavits under Federal Rule of Civil Procedure 56. See Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (verified pleading may be used as opposing affidavit under Rule 56, to the extent it is based on personal knowledge and sets forth specific facts admissible in evidence).

## III. DISCUSSION

### A. MOTION FOR JUDGMENT ON THE PLEADINGS

#### 1. Standard of Review

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). The Court "must accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party." Fleming v. Pickard, 581 F.3d 922, 925 (9th Cir. 2009). "A judgment on the pleadings is proper if, taking all of [plaintiff]'s allegations in its pleadings as true, [defendant] is entitled to judgment as a matter of law." Compton Unified School Dist. v. Addison, 598 F.3d 1181, 1185 (9th Cir. 2010).

"[T]he same standard of review applicable to a Rule 12(b) motion applies to its Rule 12(c) analog," because the motions are "functionally identical." Dworkin v. Hustler Magazine, Inc., 867 F.2d 1188, 1192 (9th Cir. 1989). Thus, a Rule 12(c) motion may be based on either: (1) the lack of a cognizable legal theory; or (2) insufficient facts to support a cognizable legal claim. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff need allege "only enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, --- U.S. ---, 129 S.Ct. 1937, 1949 (2009).

### 2. Analysis

The San Pablo Defendants contend that Plaintiff's claims for excessive force, Monell liability and for IIED are barred by Heck v. Humphrey, 512 U.S. 477 (1994). In Heck, the Supreme Court held that a civil rights complaint under § 1983 cannot proceed when "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." 512 U.S. at 487. "Heck, in other words, says that if a criminal conviction arising out of the same facts stands and is fundamentally inconsistent with the unlawful behavior for which section 1983 damages are sought, the 1983 action must be dismissed." Smithart v. Towery, 79 F.3d 951, 952 (9th Cir. 1996).

Here, Plaintiff pled no contest to a charge of violating PC § 69 based on his interaction with Defendant Brady. This section provides:

> Every person who attempts, by means of any threat or violence, to deter or prevent an executive officer from performing any duty imposed upon the officer by law, or who knowingly resists, by the use of force or violence, the officer, in the performance of his or her duty, is punishable by a fine not exceeding ten thousand dollars ($10,000), or by imprisonment pursuant to subdivision (h) of Section 1170, or in a county jail not exceeding one year, or by both such fine and imprisonment.

Cal. Penal Code § 69. A defendant cannot be convicted under section 69 "unless [the] officer was acting lawfully at the time the offense against the officer was committed." In re Manuel G., 16 Cal. 4th 805, 815 (1997). Excessive force by a police officer is not a lawful performance of his or her duties. Susag v. City of Lake Forest, 94 Cal. App. 4th 1401, 1409 (Cal. Ct. App. 2002).

The San Pablo Defendants contend that a successful judgment on Plaintiff's excessive force would require a finding that they acted unlawfully, which would effectively

- 9 -

invalidate Plaintiff's no contest plea.[2]  However, the Ninth Circuit has made clear that Heck does not bar all excessive force actions.  "[A] § 1983 action is not barred under Heck unless it is clear from the record that its successful prosecution would necessarily imply or demonstrate that the plaintiff's earlier conviction was invalid."  Smith v. City of Hemet, 394 F.3d 689, 699 (9th Cir. 2005) (en banc).  In Smith, the defendants argued that under Heck, the plaintiff's prior plea of no contest to resisting arrest under California Penal Code section 148(a)(1) precluded his claim of excessive force.  The Ninth Circuit held the defendants were not entitled to summary judgment under Heck because it was not clear from the record whether the plaintiff had plead guilty to resisting, delaying or obstructing the officer based upon his actions during his arrest (which would have triggered Heck ), or based upon his actions prior to his arrest when officers were attempting to conduct an investigation at Smith's house and had not yet attempted to detain him.  Id. at 697-98.  See also Hooper v. County of San Diego, 629 F.3d 1127, 1134 (9th Cir. 2011) (A "conviction under California Penal Code § 148(a)(1) does not bar a § 1983 claim for excessive force under Heck when the conviction and the § 1983 claim are based on different actions during 'one continuous transaction.'");  Sanford v. Motts, 258 F.3d 1117, 1120 (9th Cir. 2001) ("[I]f [the officer] used excessive force subsequent to the time Sanford interfered with [the officer's] duty, success in her section 1983 claim will not invalidate her conviction.  Heck is no bar.").

Here, the Court finds that it cannot be conclusively determined from the pleadings and documents subject to judicial notice that Heck bars Plaintiff's claims against Defendant Brady.  As in Smith, it is unclear whether the conduct underlying Plaintiff's conviction for violating Penal Code § 69 is intertwined with—or is separate from—the alleged use of excessive force.  However, Plaintiff's allegations, which must be accepted as true on a

---

[2]  In California, a plea of nolo contendere has the same effect as a guilty plea or guilty verdict for the purposes of a Heck analysis.  See Wetter v. Napa, 2008 WL 62274 (N.D. Cal. Jan. 4, 2008); Nuno v. County of San Bernardino, 58 F.Supp.2d 1127, 1135 (C.D. Cal. 1999).

motion for judgment on the pleadings, do not suggest that Defendant Brady's alleged use of excessive force was necessarily part of a chain of events tied to Plaintiff's obstructing Defendant Brady in the performance of his duties. Plaintiff claims that he was already "subdued" when Defendants Brady and Neece continued to strike and punch him. Dkt. 1 at 3. Moreover, Defendant Brady admitted that after Plaintiff fell to the ground with K-9 Doc's bite/hold to his arm, he struck Plaintiff in his face. Dkt. 57-1, Ex. B at 46:8-13. Therefore, Defendant Brady's actions are separate from or could have broken the chain of events tied to Plaintiff's obstructing that Defendant in the performance of his duties. Accordingly, the Court DENIES the San Pablo Defendants' motion for partial judgment on the pleadings.

### B.   MOTION FOR SUMMARY JUDGMENT

#### 1.   Legal Standard

Federal Rule of Civil Procedure 56 provides that a party may move for summary judgment on some or all of the claims or defenses presented in an action. Fed. R. Civ. P. 56(a)(1). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id.; see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The movant bears the initial burden of demonstrating the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file that establish the absence of a triable issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(c)(1)(A) (requiring citation to "particular parts of materials in the record"). If the moving party meets this initial burden, the burden then shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial. See Celotex, 477 U.S. at 324; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

"On a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts.'"

Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting in part Scott v. Harris, 550 U.S. 372, 380 (2007)).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  Anderson, 477 U.S. at 248.  A factual dispute is genuine if it "properly can be resolved in favor of either party."  Id. at 250.  Accordingly, a genuine issue for trial exists if the non-movant presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor.  Id.  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Id. at 249-50 (internal citations omitted).  Only admissible evidence may be considered in ruling on a motion for summary judgment.  Orr v. Bank of Am., 285 F.3d 764, 773 (9th Cir. 2002).

### 2. Contentions

County Defendants move for summary judgment on the following grounds: (1) Plaintiff is barred under the doctrine of judicial estoppel from relitigating facts that formed the basis of his plea; (2) they did not use unreasonable force against Plaintiff in violation of the Fourth Amendment; (3) they are immune from suit under the doctrine of qualified immunity; (4) they did not intentionally inflict emotional distress on Plaintiff; and (5) they were not deliberately indifferent to Plaintiff's medical needs in violation of the Eighth Amendment.  Dkt. 77 at 5.

#### a) *Judicial Estoppel*

On April 24, 2009, during a hearing in Plaintiff's criminal proceedings, Plaintiff, through his counsel, agreed with the facts as alleged at the grand jury proceeding.  Dkt. 79-3, Ex. C, 329:24-330:27.  Specifically, Plaintiff acknowledged, through his counsel, as follows:

> The People and the defense are actually, basically, in agreement about the facts alleged at the Grand Jury hearing; those are not in dispute.  ¶  And without recounting the entire incident, basically, what happens, your Honor, there is a vehicle chase, followed by a brief foot chase.  ¶  . . . [T]he pursuing officer

> pulls [Plaintiff] off of a fence . . . [m]ore than once . . . . ¶ [Plaintiff] allegedly turns around to take a fighting position, but does not actually strike the officer. ¶ He does not hit the officer, even though there's testimony of punches thrown. There's no actual injury. There's no actual assault at that point. ¶ After a second removal of [Plaintiff] from the fence, the officer succeeds in punching [Plaintiff] in the face, at which point [Plaintiff] falls to a single knee. ¶ It is in that moment that [Plaintiff's] left elbow is brought up to the officer's face one time. ¶ It is also not disputed that as a result from that heated—the officer did not suffer great—we would call great bodily injury; some soreness, some bruising, but no stitches, no fractured jaw; nothing that would constitute great bodily injury. ¶ So I believe that both sides are in agreement, at least, about those basic facts, your Honor.

Id. This stipulation would later serve as a factual basis for Plaintiff's no contest plea to violating Penal Code § 69 with regard to Defendant Brady. Dkt. 79, Ex. M at 776:18-24.

County Defendants contend that under the doctrine of judicial estoppel, Plaintiff cannot in this action deny the facts as stated in Defendant Brady's grand jury testimony. Dkt. 77 at 5. In particular, County Defendants claim that those facts included the testimony of Defendant Brady that Plaintiff "did not stop fighting with [Defendant Brady] until [Defendant] McDevitt's canine made contact with plaintiff's left arm and pulled plaintiff off [Defendant] Brady." Id. (citing Dkt. 57-1, Ex. B 45:25-46:13). As noted, on August 10, 2009, Plaintiff pleaded no contest to violating Penal Code § 69 and admitted that a factual basis existed for his plea. Id. (citing Dkt. 79, Ex. M at 776:16-24; 783:10-785:23). County Defendants argue that "[t]hose admissions directly contradict plaintiff's allegations in his second amended complaint that he was already handcuffed and lying on the ground when the canine bit him." Id. at 6.

"[J]udicial estoppel, generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC, 692 F.3d 983, 993 (9th Cir. 2012) (quoting New Hampshire v. Maine, 532 U.S. 742, 749 (2001)). Courts consider three factors in determining whether judicial estoppel applies:

> First, a party's later position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled....A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

Id. at 993-94 (quoting New Hampshire, 532 U.S. at 750-51).

In the instant case, the Court finds that the prerequites for application of the doctrine of judicial estoppel have not been satisfied. As noted, County Defendants assert that Plaintiff admitted that he did not cease fighting with Defendant Brady until he was attacked by Defendant McDevitt's canine. However, the stipulation by Plaintiff's counsel in the underlying criminal proceeding did not include, address or pertain to Plaintiff's interaction with Defendant McDevitt or his dog. Dkt. 79-3, Ex. C, 329:24-330:27. Moreover, Plaintiff has submitted a sworn declaration indicating that K-9 Doc bit him while he was on the ground (Sturgis Decl. ¶ 5), which is consistent with his verified original complaint and his SAC (dkts. 1 at 3; 27 at 5). The Court further notes that Plaintiff's aforementioned stipulation, through his counsel, was later used as the factual basis for his no contest plea to violating PC § 69 with regard to Defendant Brady. Dkt. 79, Ex. M at 776:18-24. Importantly, that stipulation only referred to Plaintiff's interaction involving *Defendant Brady*, and not Defendant McDevitt or the canine. Therefore, Plaintiff's later position (though his counsel's stipulation) is not "clearly inconsistent" with his earlier position (original complaint and SAC). See New Hampshire v. Maine, 532 U.S. at 750. Because the Court finds that County Defendants have not met the first factor of showing that the two positions are "clearly inconsistent," it need not examine the other factors. See id. As such, the Court finds that the equities do not support applying the doctrine of judicial estoppel to Plaintiff in this context; therefore, County Defendants' request to do so is DENIED.

### 3. Merits of Federal Claims

#### a) *Excessive Force*

A claim that a law enforcement officer used excessive force in the course of an arrest or other seizure is analyzed under the Fourth Amendment reasonableness standard. See Graham v. Connor, 490 U.S. 386, 394-95 (1989); Forrester v. City of San Diego, 25 F.3d 804, 806 (9th Cir. 1994). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of '"the nature and quality of the intrusion on the individual's Fourth Amendment interests"' against the countervailing governmental interests at stake." See Graham, 490 U.S. at 396 (citations omitted). Because the reasonableness standard is not capable of precise definition or mechanical application, its proper application requires careful attention to the facts and circumstances of each particular case—including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight. See id.; see also Tennessee v. Garner, 471 U.S. 1, 3 (1985) (use of deadly force reasonable only if to prevent escape and officer has probable cause to believe that suspect poses significant threat of death or serious physical injury to officer or others). These factors are not exclusive; rather, the totality of the particular circumstances of each case must be considered. See Forrester, 25 F.3d at 806 n.2.

The reasonableness inquiry in excessive force cases is an objective one, the question being whether the officer's actions are objectively reasonable in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation and without the "20/20 vision of hindsight." See Graham, 490 U.S. at 396-97. A police officer is not required to use the least intrusive degree of force possible; the officer is required only to act within a reasonable range of conduct. See Forrester, 25 F.3d at 807-08. This analysis applies to any arrest situation where force is used, whether it involves physical restraint, use of a baton, use of a gun, or use of a dog. Mendoza v. Block, 27 F.3d 1357,

1362-63 (9th Cir. 1994) (deputies' use of police dog to find suspect and secure him until handcuffed analyzed under reasonableness standard).  A law enforcement officer who does not personally apply force may nonetheless be held liable for excessive force where the officer had an opportunity to intervene and prevent or curtail the violation (e.g., enough time to observe what was happening and intervene to stop it), but failed to do so.  See Robins v. Meecham, 60 F.3d 1436, 1442 (9th Cir. 1995).

In the instant case, the parties have offered starkly different factual accounts of the incident giving rise to Plaintiff's excessive force claim.  County Defendants contend that the amount of force Defendant McDevitt used (through K-9 Doc) to subdue Plaintiff was objectively reasonable given that Plaintiff was a dangerous felony suspect who had led them on a high-speed pursuit and when the pursuit ended he would not stop fighting with them or submit to handcuffing.  In contrast, Plaintiff claims that the use of force was completely unjustified because K-9 Doc bit Plaintiff on his back, right hip, and left arm while Plaintiff remained face-down and in restraints.  See, e.g., Mendoza, 27 F.3d at 1362 ("excessive force has been used when a deputy sics a canine on a handcuffed arrestee who has fully surrendered and is completely under control").  Plaintiff suffered dog bite marks on his right hip, back, left forearm and left upper arm.  The record presented thus reveals that there is a genuine dispute of material fact as to whether the force used against Plaintiff was objectively reasonable.  Further, although Defendant Cushman neither physically struck Plaintiff nor ordered K-9 Doc to bite Plaintiff, there is evidence from which it may be inferred that he had the opportunity to intervene but failed to do so.  Cf. Robins, 60 F.3d at 1442 (prison official's failure to intervene to prevent Eighth Amendment violation may be basis for liability).

### b)     *Deliberate Indifference to Medical Needs*

The Eighth Amendment protects prisoners from inhumane conditions of confinement.  Farmer v. Brennan, 511 U.S. 825, 832 (1994)).  In order to prevail on an Eighth Amendment claim for inadequate medical care, a plaintiff must show "deliberate

indifference" to his "serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104 (1976). "This includes 'both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference.'" Colwell v. Bannister, 763 F.3d 1060, 1066 (9th Cir. 2014) (citation omitted). To meet the objective element of the standard, a plaintiff must demonstrate the existence of a serious medical need. Estelle, 429 U.S. at 104. To satisfy the subjective element, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837; see McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir.1992) ("A defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need in order for deliberate indifference to be established."), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

Again, the parties provide markedly different accounts of the officers' reaction to Plaintiff's injuries underlying his deliberate indifference claim. County Defendants contend that after Plaintiff was handcuffed, Defendant McDevitt ordered K-9 Doc to release the bite/hold, which he did immediately. Defendant McDevitt estimates that K-9 Doc was on bite/hold for approximately ten seconds. Moreover, after the incident, paramedic staff responded to the scene, but due to Plaintiff's "combative state," Defendant Brady decided to transport Plaintiff to the hospital himself. Dkt. 57-1 at 100. County Defendants claim that the vehicle pursuit began at 3:00 p.m. and by 4:56 p.m., Defendant Brady had transported Plaintiff to the hospital to have his injuries treated. Dkt. 77 at 19 (citing Amenta Decl., Ex. A; McDevitt Decl., ¶ 11).

In contrast, Plaintiff claims that he was forced to wait on the ground and in the back of a police car before being given medical treatment for his injuries, and that it was "dark out" by the time he was taken to the hospital. Sturgis Decl. ¶¶ 2, 11. Plaintiff claims that during the attack, despite his pleas for officers to stop K-9 Doc from biting him, Defendant

McDevitt waited three minutes before giving K-9 Doc the command to stop.  Plaintiff was forced to lay on the ground without any medical attention for the wounds inflicted by K-9 Doc because Defendant Brady refused assistance from paramedic staff at the scene, and none of the other officers, including County Defendants, offered to help until Plaintiff was eventually brought to the hospital.  The record presented thus reveals that there is a genuine dispute of material fact as to whether County Defendants acted with deliberate indifference to Plaintiff's medical needs.

In sum, the parties' disagreements about the events present triable issues of fact precluding the Court from granting summary judgment in favor of County Defendants on the excessive force and deliberate indifference claims.  These factual disputes also preclude summary judgment on the qualified immunity defense.

### 4. Merits of State Law Claim of IIED

The tort of IIED has these elements: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct."  Christensen v. Superior Court, 54 Cal. 3d 868, 903 (Cal. 1991).  To be "outrageous," conduct must "be so extreme as to exceed all bounds of that usually tolerated in a civilized community."  Id.

Here, for the reasons outlined above, the Court finds that Plaintiff's IIED claim survives summary judgment.  Based on the record showing a genuine dispute of material fact as to whether Defendant McDevitt's use of force (through K-9 Doc) on a subdued suspect was objectively unreasonable, the Court DENIES County Defendants' motion for summary judgment as to Plaintiff's IIED claim.

## IV. CONCLUSION

For the foregoing reasons,

IT IS HEREBY ORDERED THAT:

1. San Pablo Defendants' motion for partial judgment on the pleadings is DENIED. Dkt. 57.

2. County Defendants' motion for summary judgment and/or partial summary judgment is DENIED. Dkt. 77.

3. This case has previously been re-referred to Magistrate Judge Nandor Vadas for a settlement conference. Dkt. 111 at 1. The conference shall take place within thirty (30) days of the date of this Order, or as soon thereafter as is convenient to the Magistrate Judge's calendar. See id. Magistrate Judge Vadas shall coordinate a time and date for the conference with all interested parties and/or their representatives and, within ten (10) days after the conclusion of the conference, file with the Court a report of the result of the conference. The Clerk shall provide a copy of this Order to Magistrate Judge Vadas.

4. If this matter does not settle, the parties shall abide by the following briefing schedule:

    a. No later than **twenty-eight (28) days** from the date Magistrate Judge Vadas files his Report informing the Court that this matter did not settle, San Pablo and County Defendants may file a joint motion for summary judgment if they believe the claims can be resolved by summary judgment. If these Defendants are of the opinion that it cannot be resolved by summary judgment, they shall so inform the Court as soon as possible, but no later than the date the motion for summary judgment is due. All papers filed with the Court shall be promptly served on Plaintiff.

    b. Plaintiff's opposition to the joint motion for summary judgment shall be filed with the Court and served on San Pablo and County Defendants no later than **twenty-eight (28) days** after the date on which they file their joint motion.

    c. San Pablo and County Defendants shall file a joint reply brief no later than **fourteen (14) days** after the date Plaintiff's opposition is filed.

    d. The joint motion for summary judgment shall be deemed submitted as of the date the joint reply brief is due.

5. If San Pablo and County Defendants do not file a joint motion for summary judgment by the twenty-eight-day deadline or if they file a notice that the matter cannot be resolved by summary judgment, then this case will proceed to trial.

6. This Order terminates Docket nos. 57 and 77.

IT IS SO ORDERED.

Dated: 3/11/16

*Saundra B Armstrong*
SAUNDRA BROWN ARMSTRONG
Senior United States District Judge

P:\PRO-SE\SBA\CR.08\Sturgis5363.DenyDispMots&Refer2Settlement-rev.doc